No. 4:15-cv-1996

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
_____

RONALD JAMES HAMILTON, Jr.,

                              *Petitioner,*

v.

Bobby Lumpkin,

Director, Texas Department of Criminal Justice,
Institutional Division,

                              *Respondent.*

_____

**Motion to Amend Initial Petition for Writ of Habeas Corpus**
_____


**TO THE HONORABLE ALFRED H. BENNETT:**

      Petitioner Ronald Hamilton Jr. files this motion requesting that he be permitted to amend his initial habeas petition to include the full factual and legal basis of claim I. This claim is directly related to claim IV in Hamilton's initial filing, but the factual basis of this claim changed when Hamilton uncovered evidence proving that he was not responsible for a second capital murder used against him at his punishment trial, and when it was discovered the trial prosecutors had suppressed favorable fingerprint evidence during trial.

**I.    DURING THE STAY GRANTED BY THIS COURT A WEALTH OF PREVIOUSLY UNAVAILABLE EVIDENCE WAS DISCOVERED.**

Hamilton filed his petition for writ of habeas corpus in this Court on June 17, 2016. Doc. no. 19. Included in his initial filing was a claim alleging violations of Due Process and the Eighth Amendment based upon the idea that Hamilton had not committed a second murder used against him at his punishment trial (the "Holman murder"). *See* Doc. no. 19 at 62-68. At the time of filing, this claim was based upon Mr. Hamilton's knowledge that he had not committed the Holman murder, and belief that if certain key pieces of evidence could be forensically tested, then he would be exonerated from the allegation that he committed this second murder. *Id.* Specifically, the claim requested testing of a 40-ounce bottle that an eye witness to the Holman murder had seen the shooter touch just prior to committing the murder, and a request for additional forensic testing. *Id.*

The constitutional claims included a *Brady* claim based upon the idea that the "Houston Police Department is part of the prosecution team, and has in its possession physical evidence which will prove that Hamilton did not commit the extraneous murder they claimed he committed at his sentencing trial." *Id.* at 68. As it turns out, this claim was correct, but the factual basis of both the Due Process and Eighth Amendment claims have grown exponentially.

When Hamilton returned to state court the Harris County District Attorney's office agreed to certain forensic testing based upon the idea that no forensic testing had previously been conducted in this case. *See* Amended Petition ex. 18.[1] This was the same position, that no forensic testing had taken place prior to trial, taken by the trial prosecutors in this case. 2 RR at 8. The results of the forensic testing solidified the basis of Hamilton's Eighth Amendment and Due

---

[1] Hamilton had requested the Respondent to agree to testing of the relevant evidence, but the Respondent replied that she did not represent the agencies who could test the evidence, and would not consent to testing on those grounds. *See* Doc. no. 34, ex. 2.

Process claims. The fingerprint found on the 40-ounce malt liquor bottle touched by the shooter was not Ronald Hamilton's. *See* Amended Petition ex. 19. The fingerprint found on that bottle belonged to a man named Marshall Dwayne Knight, a man who had previously committed an aggravated robbery with a deadly weapon and been convicted of illegally carrying a weapon. *Id.*; *See* Amended Petition ex. 20.

A separate DNA lab report claimed that DNA found on the mouth of the bottle was "not suitable for comparison" and that the relevant portion of the DNA under Mr. Huynh's fingernails was "not suitable for comparison." *See* Amended Petition ex. 21. This idea was disputed by DNA expert Dr. Robert Collins at the evidentiary hearing who believed that Ronald Hamilton was excluded from the DNA on both items.

Hamilton presented all of this evidence to the Court of Criminal Appeals who remanded his case to the trial court for further proceedings. During these proceedings, the District Attorney's office continued to take the position, supported by the trial record, that "[t]here is no indication in the report that the prints or swabs were ever compared to either the applicant or to anyone else prior to trial." CR-B at 40. According to the State, when the trial court granted Hamilton's request to test forensic evidence, "there was no indication in either the State or police files that these items had ever been compared to the applicant, or to anyone else." *Id.*

However, things changed once again when Hamilton was permitted to inspect evidence in the possession of the Houston Police Department in preparation for an upcoming evidentiary hearing. After inspecting and photographing the fingerprint evidence and the envelopes containing that evidence Hamilton filed a Memorandum of Law explaining that the inspected evidence suggested "that the Houston Police Department had compared Hamilton's fingerprints to those

3

found on the bottle prior to trial." This prompted the District Attorney's office to finally disclosed that: (1) the prints were compared prior to trial and Hamilton was excluded as leaving any prints at the scene; and (2) trial prosecutor Barnett was aware of this fact prior to trial. CR-B at 423. These facts were disclosed on May 15, 2019, days before the evidentiary hearing was set to begin, and seventeen years after Hamilton's trial. CR-B at 667-672. It was on this day that the District Attorney's office disclosed a memorandum, contained in their file, proving prosecutor Barnett's knowledge that Hamilton was excluded from all fingerprint evidence left at the scene of the Holman Murder. *See* Exhibit 22.

An evidentiary hearing was also held before the trial court.[2] During the hearing and related deposition Detective Hoffmaster established that eye witness Wanda Johnson told him, within two days of the Holman murder, that the shooter had sat down this same 40-ounce bottle "on the rail that runs along the Burkett side of the store" just prior to shooting Mr. Huynh. Wanda Johnson testified and confirmed what she told the police years before: she saw the man who shot Mr. Huynh drink from and sit down the 40-ounce Schlitz malt liquor bottle on the rail prior shooting Mr. Huynh. [W]hen asked "[h]ow sure are you that the shooter set that bottle down," she responded: "I'm so sure. I would put my life on it."

A member of the Houston Forensic Science Center testified that she tested the bottled labeled "40-once Schlitz Malt Liquor bottle recovered on the metal rail outside beside store." She ran the prints through the FBI database and discovered that the print left on the bottle matched Marshall Knight. Marshall Knight, whose fingerprint was discovered on the 40-ounce beer bottle,

---

[2] The factual basis of the facts established at the hearing is discussed in greater detail in the Amended Petition for Writ of Habeas Corpus, Statement of Facts, section III, c.

4

was called to testify.[3] Not surprisingly, Marshall Knight invoked his right to remain silent, through counsel, and refused to answer any questions about the bottle, crime scene, or shooting.

The biggest surprise established at the hearing is that Debbie Benningfield, the Houston Police Department fingerprint examiner who worked on the Holman Murder scene, testified that she had compared all of the prints found at the scene to both Hamilton and his co-defendant, Shawon Smith, and that both men had been excluded from leaving all prints. However, department policy at the time required her to suppress this evidence. HPD policy at the time of Mr. Huynh's murder was to not document fingerprint exclusions. A supplement to an offense report would be made if prints were collected, if prints of value were found, and if there was an identification, but not if a suspect was excluded from leaving fingerprints.

Clear evidence also established that the trial prosecutors knew about Hamilton being excluded from all of the fingerprints collected from the Holman murder scene and that they misled the Court a defense counsel when they claimed there were no forensic testing results. Buddy Berringer, long time District Attorney's investigator explained that prosecutor Barnett asked him, prior to trial, to figure out if Mr. Hamilton had left any of the fingerprints at the Holman scene.[4] Berringer contacted the lab, discovered Hamilton was eliminated from all prints, created a memorandum of the fact and gave the memorandum to Barnett. He affirmed she would have known about the elimination based on a review of his memorandum.

Finally, an eye-witness identification expert testified to explain why the photo lineup in which Hamilton was identified might not have been reliable, and Hamilton's DNA expert

---

[3] Hr'g June 4, 2019 at 8
[4] Berringer's testimony is located at Hr'g June 3, 2019, at 40-55.

explained why he believed the recently tested DNA evidence showed Hamilton was excluded from leaving the DNA found on the 40-ounce bottle or under the victim's fingernails.

In short, as Hamilton predicted, forensic testing shows that he is not the person who touched the 40-ounce bottle handled by the real shooter just before shooting Mr. Huynh. However, what Hamilton had no way of knowing, is that the Houston Police Department conducted forensic testing prior to trial, but that HPD policy required suppression of this fact. Nor did Hamilton know that the trial prosecutors were misleading the trial court and defense counsel when they claimed no forensic testing had taken place. Mr. Hamilton asks that he be allowed to include the full factual and legal basis of his Due Process and Eighth Amendment claims which are included in his amended petition for writ of habeas corpus as claim number I.

## II. THE MOTION TO AMEND SHOULD BE GRANTED IN THE INTEREST OF JUSTICE.

The Federal Rules of Civil Procedure apply to proceedings under 28 U.S.C. § 2254. *See* Rules Governing § 2254 Case, Rule 10. Rule 15(a)(2) explains that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 applies to habeas actions. *Banks v. Dretke*, 540 U.S. 668, 704 (2004) (discussing the application of Rule 15(b)); *Withrow v. Williams*, 507 U.S. 680, 696 n.7 (1993) (recognizing that Rule 15 applies in habeas actions); *Harris v. Nelson*, 394 U.S. 286, 294 n.5 (1969) (same).

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice

to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* There is no reason to deny the motion to amend in Hamilton's case, and surely, justice requires that Hamilton have the chance to remedy these Due Process and Eighth Amendment violations before the State of Texas takes his life.

### III. CONCLUSION

Hamilton requests that he be allowed to amend his petition to include all the factual and legal bases briefed in his contemporaneously filed amended petition for writ of habeas corpus.

Respectfully Submitted,

/s/ Jonathan Landers
Jonathan D. Landers
SBN 24070101
917 Franklin St., Suite 300
Houston, Texas 77002
Cell: (713) 301-3153
Fax: (713) 513-5505
Jlanders.law@gmail.com
ATTORNEY FOR PETITIONER

### CERTIFICATE OF CONFERENCE

I certify that on April 23, 2021, I emailed with Respondent's counsel, Stephen Hoffman, about this motion and he stated that he was opposed.

/s/Jonathan Landers
Jonathan D. Landers

### CERTIFICATE OF SERVICE

I certify that all counsel of record were served with this document through the ECF system on April 26, 2021

/s/Jonathan Landers

Jonathan D. Landers